Thank you, Counsel. You may now disconnect from the call. Counsel, for the next case, you're prepared to argue. The next case is 19-2175, United States v. Ruiz. Counsel? Thank you. Good morning. Well, I said you were free to go and you're back. Just kidding. Just kidding. Just kidding. Go ahead. We're ready to start. Good morning, Your Honors. This is Karen Converse with the Federal Defenders. I am Ms. Ruiz's attorney, and I would appreciate saving a couple minutes at the end for rebuttal. Ms. Ruiz is in prison because the government didn't prove she had a gun and the jury didn't think she had to. An assertion that a gun looks real without more is insufficient to prove that the gun's real. Now, let me be clear that we are not arguing that they need an expert to examine the gun, but they need more than it looks like it. The reality is that guns are getting better and better. Even experts can't tell from looking anymore. Several of the things relied on in this case by Agent Clenenden simply don't pan out as being proof. A metal-ish glint. You can check that out on airsoft guns. That was part of our argument, and it appears as a factor in other cases that we cited that there's that glint on replicas as well. An orange tip. Those are easily removed. In the BJS study, it took someone 15 seconds to get it off. The video is grainy. Agent Clenenden didn't really have a good opportunity to view it. And we know about cases like Tamir Rice. Guns are built to look exactly like the real gun they're replicating. Counsel, you know, I call this a straight-face argument, but really, I mean, wasn't there testimony about the gun, about the specific characteristics of the gun, a conclusion that it was a real gun? Isn't that all in the record? Your Honor, thank you for that question. I'll tell you, you're not going to thank me, because I'm going to say, really? I mean, I just, okay, fault me for being straight with counsel, but I don't see it. Maybe Judge Bacrac and Judge Kelly will see it, but I just, I mean, how do you want us to announce the rule of law in the Tenth Circuit? Your Honor, we believe that Sanchez in the Fifth Circuit said it quite well. Evidence sufficient to support a conviction, if viewing the evidence and reasonable inferences thereof in the light most favorable to the government, if a reasonable jury could have, if there are equally, if it goes either way, I'm sorry, let me start that over again. The Sanchez case says, evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then the court should reverse the conviction. Right, but there is Officer Special Agent Clendenin, am I pronouncing that correctly? What are we supposed to do with his testimony? Well, he's very experienced with handguns, but for example, he relied on a shell ejector. The BJS study that we cited in our reply shows two replica guns with shell ejectors. They're fake guns, but they've got shell ejectors. What do we do with the testimony that he said he was going to start shooting people? Your Honor, this is something that the late Justice Scalia... He's just playing with them? Your Honor, this is something that the late Justice Scalia relied on in Parker that the government cites, but as noted in the Bay case that we cite, if you want to scare someone to make them think you have a gun, you pretend you have a gun. The Bay case has a very nice... Well, pretending you have a gun is one thing. Putting your hand in your pocket and, you know, pushing it out and say, I've got a gun in my pocket. That's one thing. But when you have three people that looked at it, got scared to death by it, got threatened to be shot by it, I just don't... I agree with Judge Lucero that it's a tough road to hoe. Your Honor, sufficiency of the evidence is almost always a tough road to hoe. We understand that. It's bad enough being a lawyer, having to meet that burden, and then have the court give you a hard time, right? This was not unexpected, Your Honors. The Bay case out of the Seventh Circuit was not a guideline case because he wasn't charged with 924C, but they fought the same battle in the guideline enhancement situation. A bank was robbed with a pellet gun, and I believe that they recovered the gun in that case, so they knew it wasn't a firearm as the jury defined it. And what the Bay court recognized is that they would lose most of their efficacy if they were recognized as mere air guns. So, yes, someone waving around something that they want someone to believe is a gun will make threatening statements and will not say, hey, don't worry, this is just an airsoft gun, or don't worry, this is a pellet gun. So, we respectfully disagree with the late Justice Scalia that a robber would announce that it's a fake gun if he was walking in with a fake gun. They will pretend it is a real gun. So, I think it's a hard road to disagree with the late Justice Scalia who can't speak for himself. But when you have to disagree with the real, alive Judge Lucero and real, alive Judge Kelly, and I don't know about Judge Bacharach, he's hiding in the tall weeds so far. But, well, you got the drift. What is the burden on the defense when there's been evidence adduced by witnesses that it was a gun? Shouldn't they have to come up with something to say, well, my client said it was a fake gun? Or, you know, some evidence to counter the undisputed evidence of these three different witnesses. We're in a tough situation there because the evidence adduced was that my client stayed in the car. She did not get a good look at that. The jury acquitted her of the Rosemond version of gun possession, which would require advanced knowledge that it was a gun. They only found her guilty on Pinkerton, reasonable likelihood. So she, it's nothing she saw ahead of time. We cross-examined, we adduced evidence that from both of the witnesses who had a decent chance to observe the gun. Now, Agent Clendon only saw it on a grainy video. He never saw it in person. The teller saw it up close. But again, Agent Clendon agreed that police say it's virtually impossible to train officers to identify imitation firearms from any distance. So it doesn't matter that she saw it up close. So the rule would be that unless you have the gun in your hand or a bullet hole in your chest, it may be not, maybe it wasn't a gun. Your Honor, several cases have found, like, looks like a gun plus. For example, Bowers, the defendant admitted it. In several of the cases, there was this confidential informant who knew it was a gun. There's a sound, like in Dobbs, the chambering of a round. Or in Kerwin, what it sounds like when a metal gun drops on the floor. Or in Roberson, where a witness handled it and smelled it to see if it had been recently fired. Or co-defendant testimony, like in the Mack and Kamaheli cases. Government here had two co-defendants that it chose not to call. The key distinction here is our witnesses all admitted that replicas looked just like real guns. And the jury got it wrong on the jury instruction because that definitional paragraph was left out. So they never decided. Nobody objected to that. You're right, Your Honor. I should have noticed it ahead of time, and I didn't. It wasn't until we were working on the brief-in-chief that it was noticed that that definitional instruction, which we had submitted, didn't get given. Why does the jury instruction even matter? The evidence is sufficient or it's not. So even if we assume that the jury wasn't properly instructed, how does that interplay with the inquiry that we have, which is whether there was sufficient evidence in which a reasonable jury could have found Gilby on a reasonable doubt? Your Honor, because many of the cases refer to a jury's finding on that issue. Lawson says, we will not second-guess the jury's credibility determinations. Dobbs, the jury rather than this court, is the body to resolve discrepancies. Smith and Martinez-Armestica, there isn't a deference to be given the jury in this case because the jury decided that it didn't need to be an actual working firearm. So that part of your analysis is inapplicable in a case like this, which is a very unique situation. But what do we do with all the cases we have from the Tenth Circuit that find that's perfectly okay to just have testimony? Your Honor, I think if you look at any of the cases, and maybe I'm, let me just look briefly. Greg. Greg is an older case, and our position on Greg, it is a very old case, is that guns have gotten better. And we don't know that to what, one said it wasn't a toy, but they weren't making them quite as realistic back then. And at least the jury decided, looked at it and made that decision in Greg. Well, what happens in the case where the guy goes up to a casino operator, says, give me your money or I'm going to start killing people in this casino. And then runs off when he scares everybody off, and then throws the gun in Lake Mead or some place where it can't be found. But there's all kinds of witnesses who testify it was a real gun. It was a real gun. The defendant presents no evidence whatsoever that it wasn't a real gun. And then asks us to say, on the basis of no evidence, just go ahead and speculate that it might not have been a gun. It might have been a plastic gun. I mean, come on. Are you for real? I mean, no way. The law cannot countenance that kind of an argument. Can it? Should it? Your Honor, in this case, we specifically asked the witnesses. We brought it out. They all admitted replicas do look a lot alike. And if the government can't remember the mandatory time that attaches to 924 C, this is a big deal. It could be that the government just gets the robbery conviction and just gets the guideline enhancement. Are you going to believe me or your lying eyes, right? There is actual testimony that this was a real gun. I mean, this is not speculation. What are we supposed to do? As I said to you before, what are we supposed to do with that evidence? You have not countered it. You raised doubts. Sure, that's great. But you have not countered that evidence. Your Honor, the witnesses all testified it looked like a gun to them, and they admitted that replicas look like guns too. Given the lack of any of those other factors present in other cases, it's our position that that is insufficient to support a 924 C count. And I would love to be able to reserve my remaining two minutes for rebuttal if possible. So done. Absolutely. Go ahead. As I said before, I said you were free to leave, and you chose not to. So we'll hear from you, counsel. Thank you. And may it please the court, Nicholas Ganja for the United States. Ms. Ruiz's argument, in sum and substance, is a demand for this court to overrule United States v. Greg and establish a new explicit or de facto bright line rule that unless you physically possess the firearm or it is somehow fired during the course of the event, or as Judge Kelly put it, you have a hole in your chest, that the evidence would be insufficient to sustain a 924 C conviction. Simply put, no other evidence, no amount of eyewitnesses, no amount of video evidence would be sufficient to sustain a 924 C outside of the impossibly high standards that defense counsel proposes today. So looking at the evidence as presented to the jury, which they unanimously found guilt, they found that there was two eyewitnesses, both themselves experienced with firearms, familiar with firearms, that had held firearms and believed the weapon to be real and that they would be shot if they did not comply with the robber's orders. You have them physically close to the firearm as well. You have an almost 40-year law enforcement veteran, 38 years of law enforcement, who was able to watch the firearm on video and pick apart pieces of the firearm, components of the firearm to indicate that it was real, the metallic gleam on the firearm, and able to present that to the jury. Now, the defense trial counsel could have introduced evidence to rebut that. I know there is an ATF agent that is routinely hired by defense counsel in Albuquerque. They did not. And so the jury went to the jury room with that evidence and unanimously determined to the person that that 924 C was satisfied. Now, in terms of the jury instruction argument, again, that was not preserved. We've made that argument. But even the instruction as given, even putting aside the waiver argument, it was sufficient. It said that they needed to determine that it was a firearm. And the definitional aspect of that instruction actually made the instruction more favorable to the government, not more favorable to the defense. So had that definition been provided, it actually would have been worse for the defense. The definitional argument includes frame or receiver for such a weapon, which can't fire a weapon at all. That's just an inert hunk of metal. So the definition was actually narrowed based on the popular conception of the idea of what a firearm is. In terms of defense's argument that Greg predated this current period where we have more realistic firearms, I don't think that that is factually the case. I think any child who grew up in the 60s and 70s and had a metal Cowboy Six shooter or any child that grew up in the 80s and had a jet black, you know, fake Uzi or machine gun or pistol would understand that those are no longer able to be purchased. You can buy a hot neon pink toy gun or a gun with a bright orange tip at the end. So the evidence presented in other cases and other circuits that has presented far weaker evidence in this case, less eyewitnesses, no video evidence, only brief glimpses of the firearm tucked into a waistband. Those cases are legion that demonstrate that there is sufficient evidence to support a conviction for a 924c robbery outside of possessing the physical firearm. Sure, we would love to have physically obtained the firearm and submitted it to the jury, but that was not possible. Nevertheless, this court has held under Greg that eyewitness testimony is sufficient. So I don't want to belabor any points, but I'm happy to answer questions that the court may have. Okay, well, thank you very much. Thank you. Thank you, counsel, proceeding the remainder of your time. Council, you have two left for rebuttal. Thank you, Your Honor. We are not proposing a bright line rule. We are proposing an evaluation of evidence and see what if a witness says, just looked like a gun, what else is there? The government suggested that we could have hired an ATF agent. I may get in touch with them to find out who we have in mind for my next case, but it's not our burden of proof. The government should have has a high bar anytime, but they should have a high bar, especially when there's mandatory minimum time involved, such as here. As far as the jury, the missing jury instruction narrowing, it actually broadens because as is evident from the record from what the foreman wrote me, they decided they didn't even need to figure out if it was a gun or not. And they criticized me for spending a lot of time in closing argument talking about this. And unless there are any questions, I have no further comments on Mr. Ganji's remarks. Thank you, counsel. The case is submitted. Counselor excused. We thank you all for your arguments. I think the last case is on the briefs and the court will take a will go into recess. And Mr. Huron, would you announce the recess, please?